USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                       :

ALBANIA ALMANZAR MORRISON, *as*      :
*Representative of the Estate of Roberto Almanzar*,  :
*deceased*,                           :       18-CV-06811(VEC)
                                         :
                      Plaintiff,    :      <u>MEMORANDUM</u>
                                         :      <u>OPINION AND ORDER</u>
         -against-           :
                                         :
                                         :
MILLENIUM HOTELS,                 :
                      Defendant.   :
                                         :
-------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Roberto Almanzar[1] contends that he was fired as a hotel supervisor due to his age and disability when he attempted to return from medical leave at the age of 70. Defendant M&C Hotel Interests, Inc., s/h/a Millennium Hotels ("Millennium"), moves for summary judgment, claiming that Mr. Almanzar's non-union position was eliminated as a result of Defendant's acquisition by the Hilton Management Company. At this stage, the Court must construe all facts in the light most favorable to Mr. Almanzar. Plaintiff's counsel, however, failed to pursue evidence that could have saved Plaintiff's case, was late to amend his client's deposition testimony, and inexplicably abandoned his client's strongest claims. In what is a transparent attempt to evade responsibility for his own lack of diligence, Plaintiff's counsel argues, rather boldly, that Defendant should be sanctioned and precluded from offering a defense. In short, what Plaintiff's counsel lacks in factual support and legal authority he

---

[1]     The estate of Mr. Almazar was substituted as the party plaintiff on April 19, 2021. *See* Endorsement, Dkt. 73.

compensates with wells of misplaced and manufactured outrage.[2]  As detailed below,

Millennium's motion for summary judgment is GRANTED, and Plaintiff's cross-motion to

strike Defendant's answer and for other sanctions is DENIED.

## BACKGROUND

In 1976, Roberto Almanzar began working at the Millennium Hotel, located at One UN

Plaza in New York.  Pl. 56.1 Statement (Dkt. 42) ¶ 2–3.  He began as a dishwasher and earned

promotions to stewarding manager and purchasing manager.  Almanzar Dep. (Dkt. 43-9,

available at Dkt. 61-1) at 9–12.  In October 2016, Mr. Almanzar took medical leave after he was

hospitalized for internal bleeding.  *Id.* at 22; Pl. 56.1 Statement ¶ 7.  At the time, he held the

position of stewarding manager and was a non-union employee.  Pl. 56.1 Statement ¶ 4.

In January 2017, after exhausting twelve weeks of medical leave under the Family and

Medical Leave Act (FMLA), Mr. Almanzar was not medically cleared to return to work.  *Id.* ¶ 8.

He requested additional leave as an accommodation; Millennium approved the request and

allowed him to take 12 more weeks of leave.  *Id.* ¶¶ 9–10.  That extended leave period was set to

expire on April 24, 2017.  *Id.* ¶ 10.

On March 27, 2017, prior to the end of the leave period, Mr. Almanzar attempted to

return to work.  Almanzar Dep. at 26.  He submitted a note from a doctor stating that he could

return to work "with no limitations."  Lefkowitz Decl. (Dkt. 43-2).  According to Plaintiff's

deposition testimony, Millennium did not accept the note; the hotel instead sent him a job

---

[2]     The structure of Plaintiff's memorandum of law is emblematic of his misplaced priorities and deficient performance.  His 24-page brief begins with four pages of background lacking adequate citations to the record and 12 pages railing against defense counsel, raising untimely discovery disputes, and citing hardly any law.  *See* Pl. Br. (Dkt. 41) at 1–16.  Although the amended complaint alleges age and disability discrimination pursuant to four different statutes, counsel spends fewer than five pages discussing the merits of those claims, omitting all discussion of claims under state and local law.  *See id.* at 17–21.  The remaining four pages are spent explaining why Plaintiff's counsel missed a critical deadline and attempting to save his client from the consequences of counsel's oversight. *See id.* at 21–24.

description for the position of stewarding manager and asked for a more extensive medical evaluation that assessed Mr. Almanzar's ability to perform the essential functions of the job. Almanzar Dep. at 26, 29–30.  Mr. Almanzar's cardiologist then completed a functional assessment in accordance with the job description, reporting that he can return to work on "modified duty."  Augello Decl. Ex. D (Dkt. 36-4) at 2.  Specifically, the doctor indicated that Plaintiff could not walk for longer than 30 minutes at a time and that he could not lift more than fifty pounds as required by the job description.  *See id.*

During Mr. Almanzar's extended leave, negotiations were underway for the Hilton Management Company to acquire Millennium.  Robbins Decl. (Dkt. 35) ¶ 8.  According to Millennium, it needed to terminate all non-union employees prior to the planned transition to Hilton's management on August 30, 2017.  *Id.* ¶ 17.   On May 19, 2017, Millennium terminated Mr. Almanzar's employment, explaining that he could not perform all aspects of the stewarding manager position, which was being eliminated in any event.  *Id.* ¶¶ 14–15, 17.  Part of the hotel's rationale for terminating Mr. Almanzar's position was that it had been unoccupied for 24 weeks without any adverse impact on the hotel.  *Id.* ¶ 15.  Millennium further noted in the termination letter that no modified duty position was available.  Augello Decl. Ex. F (Dkt. 36-6).

Mr. Almanzar disputes the physical requirements of his job.  He testified that, contrary to the job description, as a stewarding manager, he did not have to stand for long hours or lift more than fifty pounds.  Almanzar Dep. at 61 ("Q: Walking and standing for several hours at a time. Were you required to do that?  A:  Not really."), 63 ("[O]ccasionally lifting, pushing and pulling in excess of 50-pounds.  Was that part of your job?  A:  No.").

In an affidavit submitted after his deposition,[3] Mr. Almanzar claims that the hotel was "not being truthful" when it said that no position was available that would have accommodated his medical condition.  Almanzar Decl. (Dkt. 40) ¶ 9.  He avers that, based on his extensive experience working at the hotel, there likely would have been at least one temporary position of some kind that he could have filled.  *Id.*  He does not, however, cite any particular position that would have been suitable for him, nor does he purport to have any specific knowledge of the state of hiring at the hotel during the transition period in May 2017.  *Id.*

Mr. Almanzar also claims that his position was not eliminated by the Hilton transition.  In particular, he points to an organization chart dated February 2017, which showed Mr. Almanzar occupying the role of stewarding manager.  Lefkowitz Decl., Ex. R (Dkt. 43-18).  He also cites a transition email dated August 30, 2017, sent to Hilton by Millennium's IT director.  Lefkowitz Decl., Ex. Q (Dkt. 43-17).  The email contained a list of employees whose email addresses were being transferred to Hilton; that list included Mr. Almanzar, who was identified as the "purchasing manager," the position that Mr. Almanzar held prior to becoming stewarding manager in 2013.  *See id.* at 3; Augello Decl., Ex. C (Dkt. 36-3) at 1.

---

[3]     At times, the affidavit contradicts Mr. Almanzar's earlier testimony.  For instance, according to the affidavit, Plaintiff's "duties as Stewarding Manager were entirely supervisory, involved little or no lifting, pushing, pulling, extended standing or walking, or manual labor of any kind."  Almanzar Decl. (Dkt. 40) ¶ 4.  At his deposition, however, Mr. Almanzar admitted that he lifted a variety of equipment for his job, including a meat-slicing machine that weighed up to 20 pounds.  Almanzar Dep. (Dkt. 43-9) at 98.  To the extent that the affidavit contradicts the deposition testimony, the latter controls for purposes of this motion.  *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014) ("[P]laintiffs may not create material issues of fact by submitting affidavits that dispute their own prior testimony.").

Indeed, Mr. Almanzar's declaration appears to have been drafted by counsel to create factual disputes, adding details that Mr. Almanzar could not clearly recall at the deposition.  The declaration even shares Mr. Almanzar's view on fact versus legal issues, ripeness for resolution at the summary judgment stage, hearsay, and the admissibility of evidence at trial.  *See generally id.*  Much of counsel's memorandum of law then copies-and-pastes from Mr. Almanzar's declaration without quotation marks.  *Compare* Pl. Br. at 3 ("It is crucial to note that Plaintiff's duties as Stewarding Manager were entirely supervisory, involved little or no lifting, pushing, pulling, extended standing or walking, or manual labor of any kind.") *with* Almanzar Decl. ¶ 4 ("It is crucial to note that my duties as Stewarding Manager were entirely supervisory, involved little or no lifting, pushing, pulling, extended standing or walking, or manual labor of any kind.").

4

After his termination, Mr. Almanzar attempted to find a job as a hotel housekeeping supervisor.   Although he did not recall a specific number, Plaintiff testified that he submitted between five and ten applications in September 2017 — but at no other time that year.   Almanzar Dep. at 88.   In 2019, he submitted four applications but did not receive any interviews or offers. *Id.* at 72–75, 82, 85.   Mr. Almanzar also testified that he did not apply for any jobs in 2018, nor did he look at any stewarding positions at any point.[4] *Id.* at 89, 91.   Plaintiff did not secure any employment after his termination from Millennium.   *Id.* at 87.

## DISCUSSION

The skeletal amended complaint — generously construed — accuses Millennium of age and disability discrimination under federal, state, and local law.   Millennium moves for summary judgment on multiple grounds, including that Mr. Almanzar was terminated for non-discriminatory reasons; that he failed to mitigate damages; that damages should, alternatively, be capped at three months' salary because Hilton undoubtedly would have terminated his position when it took over the hotel in August 2017 even if he had not been fired in May; and that Plaintiff's counsel failed to comply with procedural pre-requisites for asserting a claim under New York City Human Rights Law.   Plaintiff cross-moves to preclude Defendant from offering a defense because Millennium's Rule 30(b)(6) witness, who is part of the hotel's new management, lacked personal knowledge of Plaintiff's firing; he also contends that Millennium should be sanctioned for spoliation of evidence, namely Plaintiff's employment file, and for failure to disclose certain documents during discovery.   For the reasons explained below,

---

[4]      After Plaintiff's deposition and after the time period for corrections to the deposition had elapsed, Plaintiff's counsel submitted an errata sheet, contradicting several of his client's deposition responses.  Augello Decl., Ex. G (Dkt. 36-7).  According to the errata sheet and contrary to his earlier testimony, Mr. Almanzar applied for multiple positions other than housekeeping supervisor; he also reportedly applied for jobs in 2017 during months other than September, as well as for additional jobs in 2019.  *Id.*  Mr. Almanzar also recanted his testimony that he had not looked for any stewarding manager positions.  *Id.*  Plaintiff's counsel offered a one-word explanation for all of those direct contradictions: "accuracy."  *Id.*

Defendant's motion for summary judgment is granted, and Plaintiff's motion to strike

Defendant's answer and for other sanctions is denied.

### A. Millennium's Motion for Summary Judgment

Summary judgment is appropriate "if the evidence, viewed in the light most favorable to

the party against whom it was entered, demonstrates that there are no genuine issues of material

fact and that the judgment is warranted as a matter of law." *Delaney v. Bank of Am. Corp.*, 766

F.3d 163, 167 (2d Cir. 2014) (citation omitted).  A genuine dispute of material fact exists when

"a reasonable jury could decide in the non-movant's favor." *Id.* (citation omitted).  Plaintiff

claims that he was discriminated against on the basis of age and disability, in violation of the

Age Discrimination in Employment Act[5] (ADEA) and the Americans with Disabilities Act[6]

(ADA), respectively.  He also asserts that his termination constituted age and disability

discrimination under the New York State Human Rights Law[7] (NYSHRL) and the New York

City Human Rights Law[8] (NYCHRL).

---

[5]      29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.").

[6]      42 U.S.C. § 12112 ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

[7]      N.Y. Exec. Law § 296(1) ("It shall be an unlawful discriminatory practice . . . [f]or an employer or licensing agency, because of an individual's age . . . , [or] disability . . . , to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.").

[8]      N.Y. City Admin. Code § 8-107(1) ("It shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived age, . . . , disability . . . : (1) To represent that any employment or position is not available when in fact it is available; (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.").

### 1. Plaintiff's Federal Claims

Discrimination claims under the ADEA and ADA may be established either through direct evidence or under the familiar *McDonnell-Douglas* burden-shifting framework. *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) ("We analyze employment-discrimination claims under the ADA, Title VII, and the ADEA using the now-familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). "Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions." *Id.* "[T]he plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* Unlike Title VII, for which the burden-shifting framework was originally conceived, both the ADEA and the ADA require the employee to establish but-for causation.[9] Thus, to survive summary judgment, Plaintiff must show that a jury could reasonably conclude that the employer would not have eliminated his position if he had been younger or did not have a disability. *See Naumovski v. Norris*, 934 F.3d 200, 214–15 (2d Cir. 2019) ("[T]o establish 'pretext' . . . , a plaintiff must establish that the employer's stated reason would not, alone, constitute a *sufficient* basis for pursuing an adverse action." (emphasis original)); *Genova v. Cty. of Nassau*, No. 17-CV-4959, 2020 WL 813160, at *6 (E.D.N.Y. Feb. 19, 2020). Even viewing the record in his favor, Plaintiff has failed to show that the Hilton acquisition was not an independently sufficient reason for eliminating the stewarding manager position.

For purposes of this motion, the Court assumes that Plaintiff has made a *prima facie* showing of discrimination.[10] *See Cortes v. MTA New York City Transit*, 802 F.3d 226, 231 (2d

Cir. 2015) ("We will assume, without deciding, that [the plaintiff] established a *prima facie* case by alleging that he was not allowed to return to work after being injured . . . ."). The burden then shifts to Millennium to dispel the temporary presumption of discrimination by proffering a non-discriminatory rationale for the elimination of Plaintiff's position. *See Kovaco*, 834 F.3d at 136; *Delaney*, 766 F.3d at 168 (reiterating Second Circuit's holding that a reduction in workforce "constitutes a legitimate, nondiscriminatory reason for termination of employment"). Millennium claims that Plaintiff's position was eliminated because: (1) Plaintiff was not physically able to perform all essential aspects of his job; (2) the non-union position had to be eliminated prior to the transition to Hilton management; and (3) the position had become unnecessary, as evidenced by the fact that it was unfilled for 24 weeks without any adverse impact on the hotel. Because Millennium has offered non-discriminatory rationales, Plaintiff must demonstrate that those rationales were not independently sufficient to cause the elimination of his position.

     As to the physical requirements of his job, Plaintiff has demonstrated a genuine dispute of material fact. Although the job description provided by Millennium specified the ability to

---

[9]     *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) ("[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action."); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ("[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." (citation omitted)).

[10]     The Court notes, however, that there is significant doubt whether the record can support a *prima facie* showing as to age discrimination. To establish a *prima facie* case of discrimination, the plaintiff must "demonstrat[e] that he suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (citation omitted). Besides the fact that Plaintiff happened to be 70-years old at the time of his termination, Plaintiff has not articulated any discernible nexus between his termination and his age. There is no evidence (or even allegation) of ageist statements; nor are there any circumstances from which age discrimination could be inferred, such as favorable treatment of a similarly situated employee of a different age, replacement of Mr. Almanzar with a younger employee, or transfer of Mr. Almanzar's responsibilities to a younger employee. *Cf. Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989).

stand for several hours and to lift in excess of fifty pounds occasionally, Plaintiff testified at his

deposition that he did not do either of those things in his years as stewarding manager.

Ascertaining the essential functions of Plaintiff's job is a fact-intensive inquiry.  *See McMillan v.*

*City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (noting that "relevant factors to consider

include the employer's judgment, written job descriptions, the amount of time spent on the job

performing the function, the mention of the function in a collective bargaining agreement, the

work experience of past employees in the position, and the work experience of current

employees in similar positions").  Here, a jury could credit Plaintiff's testimony and conclude

that, contrary to the job description, the stewarding manager position was not beyond Mr.

Almanzar's physical capabilities in May 2017.[11]

Because of the but-for causation standard, however, demonstrating that one of

Millennium's proffered rationales could be pretextual is not sufficient to survive summary

judgment.  *See Delaney*, 766 F.3d at 168 (explaining that existence of mixed motives is

insufficient to show age discrimination); *Genova*, 2020 WL 813160, at *5 ("[W]here a case

presents nothing more than a mixed motive theory of [ADA] discrimination, dismissal is

required.").  Accordingly, Plaintiff must cite evidence in the record, which, if viewed most

favorably to him, could allow a factfinder to reasonably conclude that his position was not

---

[11]    Plaintiff attempts to make much hay of the fact that Defendant submitted a different job description to the Equal Employment Opportunity Commission during the administrative proceeding.  While such a discrepancy could, in some cases, suggest bad faith or discriminatory animus, the circumstances of this case do not.  First, the job title for the description transmitted to the EEOC is "Executive Steward," not "Stewarding [M]anager," which suggests a mistake.  Lefkowitz Decl., Ex. G (Dkt. 43-7) at 5.  Second, to the extent that there were foul play, one would expect a materially different job description in terms of the physical demands of the job.  The Executive Steward position has physical requirements comparable to those listed in the stewarding manager description, including the ability to "stand and move throughout the facility for long periods of time, ten hours or more" and to "grasp, hold, and carry items weighing up to 40 lbs." Lefkowitz Decl., Ex. G at 6.  The Court simply sees no advantage that Defendant could have derived by intentionally substituting the Executive Steward description for the Stewarding Manager description.

eliminated on account of the Hilton transition or Millennium's realization that the position was unnecessary.

Plaintiff has failed to do so.  His argument consists of evidence that is either exculpatory to Defendant or irrelevant.  *See* Pl. Br. (Dkt. 41) at 18.  First, Plaintiff points to an organizational chart dated February 2017, which showed that Mr. Almanzar continued to be the designated stewarding manager during his extended leave.  *Id.*  Plaintiff argues that the chart proves that Mr. Almanzar's position was not being eliminated.  At best, however, the chart shows that Mr. Almanzar's position had not been eliminated *as of February 2017*, three months before his eventual termination.  If anything, the chart tends to show that Millennium did not replace Mr. Almanzar with someone younger or without a perceived disability while he was on leave and had acted in good faith in holding the position for him.

Similarly, Plaintiff's counsel contends that Mr. Almanzar's position was not slated to be eliminated because, if it had been, Millennium would not have extended Mr. Almanzar's leave in January 2017.  Again, Millennium's decision to grant Mr. Almanzar an accommodation when he could not return to work after the exhaustion of his FMLA leave merely shows that his position had not been eliminated as of early January 2017 — which is entirely consistent with Millennium's representation that the Hilton negotiations spanned the winter and spring of 2017.  Likewise, Millennium's request for a medical assessment of Plaintiff's physical limitations upon his return, at best, shows that Plaintiff's position had not been eliminated as of late-March 2017.[12]

---

[12]     Plaintiff's argument might have carried some force if he had deposed any witnesses about the timeline of the Hilton acquisition and ascertained exactly when Millennium entered into the agreement and learned that all non-union positions were required to be eliminated prior to the handover of management.  If the circumstances animating Mr. Almanzar's termination had materialized long before May 2017, that could cast doubt on the veracity of Millennium's explanation for his termination.  Plaintiff's counsel, however, either did not pursue or neglected to include such evidence in the record.

Finally, according to Plaintiff, the August 2017 email that transmitted a list of employees whose email addresses were to be transitioned to Hilton addresses demonstrates that the stewarding position was not being eliminated. *Id.* at 19. No reasonable factfinder could draw such an inference. The email, which was sent three months after Mr. Almanzar was fired, could not have accurately identified Mr. Almanzar as an active employee. Moreover, it listed Mr. Almanzar as the purchasing manager, a position that Mr. Almanzar had not occupied since 2013 — approximately four years prior to his termination. The August email supports two possible, reasonable inferences: first, that Millennium transmitted an inaccurate and outdated list, or second, that Millennium simply wanted to ensure that any emails sent to Mr. Almanzar's email address after his termination would be forwarded to an active account monitored by Hilton. Neither inference is of any value to Plaintiff's case.[13]

Although Plaintiff's counsel did not raise this point in his brief, Mr. Almanzar's post-deposition declaration indicates that he believed Millennium to have been untruthful when it told him that no modified duty positions were available for him in May 2017. He claims, in general terms, that such positions were likely to have been available. Plaintiff does not, however, appear to advance (or brief) any claim of failure to accommodate his disability. Nor is Mr. Almanzar's conclusory and unsupported hypothesis — which is divorced from any contemporaneous knowledge of Millennium's staffing needs (half a year after he went out on leave) and any detail as to what positions Mr. Almanzar had in mind — sufficient to defeat summary judgment. *See DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 121–22 (2d Cir. 2012) ("Mere 'conclusory

---

[13] Plaintiff's counsel does not argue that Mr. Almanzar's termination three months prior to the Hilton transition is indicative of pretext. Even if he had, however, Plaintiff would have had no answer for Millennium's argument that it eliminated the stewarding manager position in May in part because the position had been vacant for six months without adverse impact. As far as the Court can tell, Plaintiff's counsel never obtained any testimony or other evidence that tends to show that Plaintiff's position was, in fact, needed, such as by showing that his responsibilities had been transferred to another employee while he was on medical leave.

allegations or unsubstantiated speculation' by the plaintiff will not defeat summary judgment." (quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998))).

For those reasons, Plaintiff has not shown that Plaintiff's age or disability was a but-for cause for his firing. Defendant's motion for summary judgment must, therefore, be granted as to Plaintiff's ADA and ADEA claims.

### 2. Plaintiff's NYSHRL Claims

Although the amended complaint is less than clear, the Court broadly construes Plaintiff's single-paragraph allegation to assert two claims — age and disability discrimination under NYSHRL. *See* Am. Compl. (Dkt. 15) ¶ 38 ("For the reasons alleged above Defendant terminated plaintiff's employment in violation of the New York State Human Rights Law §290 *et seq*."). Although New York courts have not definitively decided whether the NYSHRL, like the ADA and the ADEA, requires but-for causation, federal courts in this circuit have consistently treated the NYSHRL and the federal analogs as employing the same substantive standard. *See Szewczyk v. City of New York*, No. 15-CV-918, 2016 WL 3920216, at *9 n.8 (E.D.N.Y. July 14, 2016) ("The Court continues to follow the Second Circuit and courts in this Circuit, and applies the 'but for' standard to Plaintiff's NYSHRL age discrimination claims.") (collecting cases); *DeKenipp v. State*, 97 A.D.3d 1068, 1070 (3d Dep't 2012) ("This Court has not yet determined whether this recent and more stringent federal standard applies to the analysis of age discrimination under the Human Rights Law."). The Court further notes that Plaintiff's counsel failed to argue for the application of a lesser standard — indeed, his brief makes no mention of Plaintiff's claims under state and local law. Accordingly, even if such claims were

not abandoned,[14] his NYSHRL claim fails for the same reason that Plaintiff's federal claims do not survive summary judgment.

### 3. Plaintiff's NYCHRL Claims

Plaintiff's allegation under the NYCHRL — again, charitably construed — invokes an anti-discrimination law intended to be broader than its federal analogs. The Second Circuit has repeatedly emphasized that "the provisions of the NYCHRL are to be construed independently from similar or identical provisions of New York state or federal statutes." *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015) (citation omitted). Unlike the NYSHRL, the NYCHRL clearly embraces a more capacious causation standard. *See id.* (explaining that plaintiff need only show "any causal link" between age bias and plaintiff's firing). Plaintiff's NYCHRL claims fail, however, for procedural reasons that Plaintiff failed to contest.

Millennium argues that Plaintiff cannot assert an NYCHRL claim because he failed to serve a copy of the complaint on the City Commission on Human Rights (the "Commission") and on the corporation counsel. N.Y. City Admin. Code § 8-502(c) ("The city commission on human rights and the corporation counsel shall each designate a representative authorized to receive copies of complaints in actions commenced in whole or in part pursuant to subdivision a of this section. Within 10 days after having commenced a civil action pursuant to subdivision a of this section, the plaintiff shall serve a copy of the complaint upon such authorized representatives."). Courts in this district generally allow plaintiffs significant time to remedy any failure to serve papers in accordance with NYCHRL before dismissing the claim for failure to comply. *See Chau v. Donovan*, 357 F. Supp. 3d 276, 287 (S.D.N.Y. 2019) (collecting cases

---

[14]     *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

where courts have allowed plaintiffs up to thirty days after notice of service defect to come into
compliance).  In this case, however, Plaintiff failed to make any effort to comply in the more
than two years after commencing this action and in the more than ten months after defense
counsel put him on notice of the defect.  Most important, Plaintiff's summary judgment response
fails to address — in any way — Defendant's procedural argument; indeed, Plaintiff's counsel's
entire opposition brief makes no mention of Plaintiff's NYCHRL claim whatsoever.  *See
generally* Pl. Br.  The Court, therefore, regards Plaintiff as having abandoned — inexplicably —
his NYCHRL claims, which would have been easier to prove than his state and federal claims.
*See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) (holding that claims not defended in
response to a motion for summary judgment are abandoned).

### 4.  Plaintiff's Failure to Mitigate Damages

Millennium contends that Plaintiff should be precluded from recovering any
compensatory damages in this action because he failed to take reasonable steps to mitigate his
damages after the termination.  Although this argument is moot because his claims do not
survive summary judgment, Defendant is correct that if Plaintiff's claims had survived the
motion for summary judgment, he would be precluded from seeking compensatory damages.

Under the ADEA, ADA, and NYSHRL, a victim of employment discrimination has a
duty to mitigate his or her damages; failure to do so may preclude recovery of back and front
pay, if alternative employment was available.  *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d
47, 53 (2d Cir. 1998) (requiring mitigation in ADA, NYSHRL case); *Vernon v. Port Auth. of
New York & New Jersey*, 220 F. Supp. 2d 223, 234–35 (S.D.N.Y. 2002) ("An employee
discharged under . . . the ADEA must take reasonable measures to mitigate their losses.").
Plaintiff does not dispute that, if his deposition testimony was accurate, he would have failed to

demonstrate a reasonable effort to find other employment.  Plaintiff's counsel instead argues that

his untimely errata sheet, which seeks to reverse much of Mr. Almanzar's deposition testimony

regarding his job search efforts, would, if accepted, demonstrate compliance with the duty to

mitigate.  Pl. Br. at 21 ("[O]nce the testimony from the Errata sheet is considered there is ample

evidence that Plaintiff satisfied his duty to mitigate, or for the purposes of this motion there is a

material issue of fact.").

        Pursuant to Rule 30(e) of the Federal Rules of Civil Procedure, "the deponent must be

allowed 30 days after being notified . . . that the transcript or recording is available in which: (A)

to review the transcript or recording; and (B) if there are changes in form or substance, to sign a

statement listing the changes and the reasons for making them."  Fed. R. Civ. P. 30(e).  In the

Second Circuit, a deponent may substantially revise — or even contradict — his earlier

testimony via an errata sheet, although the earlier statement remains admissible at trial and is not

stricken by the submission of errata.  *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d

Cir. 1997) ("The language of the Rule places no limitations on the type of changes that may be

made nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy

of the reasons for the changes—even if those reasons are unconvincing.") (cleaned up).  The 30-

day requirement, however, is strictly enforced.[15]  *See Samms v. Abrams, Fensterman,*

*Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 117 (S.D.N.Y. 2016)

(rejecting errata sheet filed after 31 days).  Courts have discretion to allow untimely errata,

typically for *pro se* litigants or litigants facing extenuating circumstances, such as homelessness.

---

[15]      *See also EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 266 (3d Cir. 2010) ("Courts are entitled to
enforce Rule 30(e)'s time limit strictly and strike untimely errata); *Becker v. Lederer*, No. 15-CV-44, 2016 WL
1452331, at *7 (D.D.C. Apr. 13, 2016) ("Courts are entitled to enforce Rule 30(e)'s time limit strictly and strike
untimely errata, but a Court may also extend the time at the Court's discretion."); *MGA Ent., Inc. v. Nat'l Prod. Ltd.*,
No. 10-CV-7083, 2012 WL 12886204, at *1 (C.D. Cal. Apr. 12, 2012) ("To effectuate Rule 30's policy of accuracy,
courts generally insist on strict adherence to the technical requirements of this provision.") (quoting *E.I. du Pont de
Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 294–95 (E.D. Va. 2011)).

*See, e.g.*, *Thompson v. Workmen's Circle Multicare Ctr.*, No. 11-CV-6885, 2015 WL 4591907, at *4 (S.D.N.Y. June 9, 2015) ("While plaintiff's errata sheets were late, they were only one week late.  Plaintiff is proceeding *pro se,* and her lateness has not resulted in any prejudice to defendant."); *Khaleel v. Potter*, No. 05-CV-1574, 2007 WL 9753109, at *1 n.1 (E.D.N.Y. July 13, 2007), *aff'd*, 307 F. App'x 527 (2d Cir. 2009) ("[P]laintiff's changes to the deposition were only two days late.  Given plaintiff's *pro se* status and the fact that he was living in a homeless shelter at that time, the court exercises its discretion to consider plaintiff's changes.").  Given that deponents have virtually unlimited leeway to correct earlier testimony, the timeliness requirement of Rule 30(e) takes on greater significance in ensuring the finality and accuracy of deposition testimony.

Here, Plaintiff's counsel was four days late in submitting his errata sheet.[16]  He received the deposition transcript on July 31, 2019; the errata sheet was therefore due on Friday, August 30, 2019.  Lefkowitz Decl., Ex. J (Dkt. 43-10).  According to Plaintiff's counsel, he left for Labor Day weekend before sending the errata sheet to defense counsel; he then emailed the sheet on Tuesday, September 3, 2019, when he returned to work.  Pl. Br. at 22.  Plaintiff's counsel contends that the lateness was merely one day because "we do not include the weekend and holiday in such calculations."  *Id.*  The Court is unaware of any rule excluding weekends and holidays from the calculation of lateness.  Rather, Rule 6(a)(1) clearly states that every day should be counted, "including intermediate Saturdays, Sundays, and legal holidays."  Consistent with his deficient performance throughout this litigation, Plaintiff's counsel's failure to count

---

[16]      Plaintiff's counsel notes that his client sent him a reminder on August 29, 2019.  He argues that the fault is entirely his own and that his client should not be penalized for counsel's inadequacies.  Whatever claim Mr. Almanzar's estate might have against Mr. Lefkowitz for malpractice does not relieve Plaintiff from the dictates of Rule 30(e).  In any event, Plaintiff's failure to mitigate is academic given the grant of summary judgment to Defendant.

days accurately — while attempting to minimize his own negligence — contradicts his audacious claim that he is "an extremely careful attorney" who "strive[s] to adhere to deadlines." *See id.* Indeed, his opposition papers in this motion included a placeholder for his client's deposition transcript. He failed to file the deposition for more than nine months; it took several reminders from Chambers and a Court order to address this mundane issue, which should have been resolved well before the filing of the motion papers. *See* Lefkowitz Decl., Ex. I (Dkt. 43-9). Because Plaintiff is not *pro se*, and Plaintiff's counsel has failed to provide any extenuating circumstance beyond boneheaded deflections, were Plaintiff's claims to have survived summary judgment, the Court would have declined to exercise its discretion to relieve the Plaintiff from the consequences of his attorney's lack of diligence.

### B.     Plaintiff's Motion for Sanctions

### 1.   Motion to Strike Defendant's Answer

Plaintiff seeks the "extreme" and "drastic" remedy of striking Defendant's pleading, without citing any legal authority for doing so. *See* Pl. Br. at 5; *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (affirming decision to strike based on litigant's "flagrant bad faith" and its counsel's "callous disregard" of the district court's order); *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990) ("[A] sanction so drastic as striking an answer or entering a default judgment is not ordinarily imposed unless the disobedience has been willful, or in bad faith, or otherwise culpable."). Indeed, the Court previously warned Plaintiff that his contemplated motion to strike failed to cite any authority. *See* Dkt. 29. Months later, Plaintiff's memorandum of law failed even to reference the relevant rule, leaving the Court to fill in the blanks of Mr. Lefkowitz's performative outrage. That alone is sufficient to deny Plaintiff's motion to strike.

To the extent that Plaintiff moves pursuant to Rule 37, his motion is meritless.  Rule 37(b) authorizes sanctions against a party for failure to comply with a district court's discovery orders, but Plaintiff does not identify any order that has been violated, let alone willfully violated.[17]  Rule 37(d) authorizes sanctions against a party who fails to attend its own deposition, but Millennium did produce its vice president of human resources, Tony Lee, for its Rule 30(b)(6) deposition.  Lefkowitz Decl., Ex. M (Dkt. 43-13) at 13.  Mr. Lefkowitz's chief complaint is that Mr. Lee lacked personal knowledge of Plaintiff's termination and, therefore, could not answer questions related to the termination during the deposition.  Pl. Br. at 7.  Counsel's outrage is befuddling because he does not dispute that defense counsel told him, weeks and months in advance, that Millennium is under new management and that members of the new management would not have direct knowledge of Mr. Almanzar's termination.  *See* Pl. Letter (Dkt. 27) at 3; Def. Opp. Br. (Dkt. 47) at 12.  Indeed, as defense counsel points out, the Court authorized Plaintiff to compel Defendant to answer interrogatories about its defenses, precisely to address the fact that none of Millennium's current employees has direct knowledge of Plaintiff's termination.  *See* Dkt. 29.  Plaintiff apparently failed to avail himself of that remedy and cannot now be heard to complain.  Moreover, Millennium's Rule 30(b)(6) witness could have provided relevant testimony, including about Hilton's policy of eliminating non-union positions upon acquisition, if Plaintiff's counsel had chosen to pursue such inquiries.[18]  In short, Millennium was forthright about the understandable limitations of its witness's direct knowledge, and the Court sees no basis for sanctions pursuant to Rule 37.

---

[17]     The Court discusses its inherent sanctions power in the later discussion of spoliation.

[18]     Plaintiff's counsel provided the Court with only six pages of Mr. Lee's deposition testimony.  *See* Lefkowitz Decl., Ex. M (Dkt. 43-13).

To the extent that Plaintiff moves to strike or for other sanctions under Rule 11, that

motion is also denied.  First, Rule 11(d) makes clear that it is inapplicable to noncompliance with

discovery rules or orders.  Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and

discovery requests, responses, objections, and motions under Rules 26 through 37.").  Second,

Plaintiff has not demonstrated that the denials contained within Defendant's answer were

"frivolous, legally unreasonable, or factually without foundation."  *See Toussaint v. NY Dialysis

Servs., Inc.*, 230 F. Supp. 3d 198, 221 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017); *see also*

Fed. R. Civ. P. 11(b).  While Mr. Lee testified that he lacked personal knowledge about

Plaintiff's disability and termination and that he was not aware of any remaining employee at

Millennium who did, Defendant is entitled to rely on other evidence to defend the lawsuit.  *See

StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("With respect to factual

contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in

support." (citation omitted)).  And, as set forth in its Rule 26 disclosures, former Millennium

employees had relevant information, even if Plaintiff's counsel did not discover it.  *See*

Lefkowitz Decl., Ex. K (Dkt. 43-11) at 2; Robbins Decl.  Defendant's non-discriminatory

rationale for Mr. Almanzar's termination is far from frivolous, and Plaintiff has failed to show

that the answer violated Rule 11.[19]  *See Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir.

1995) ("An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if,

under an objective standard of reasonableness, it is clear . . . that there is no chance of success

---

[19]     For similar reasons, Plaintiff cannot show that the filing of the answer violated 28 U.S.C. § 1927.  *See
Optical Commc'ns Grp., Inc. v. M/V AMBASSADOR*, 938 F. Supp. 2d 449, 465 (S.D.N.Y. 2013) ("To impose
sanctions under this provision, a court must find that the challenged claim was (i) without a colorable basis and (ii)
brought in bad faith, i.e., motivated by improper purposes such as harassment or delay.") (quoting *Enmon v.
Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)), *aff'd*, 558 F. App'x 94 (2d Cir. 2014).

and no reasonable argument to extend, modify or reverse the law as it stands.") (citation omitted).

Finally, to the extent that Plaintiff moves to strike pursuant to Rule 12(f), he has neither attempted to make, nor succeeded in making, the requisite showing.  Under Rule 12(f), "[the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Plaintiff has offered no explanation as to how Defendant's denial of any age or disability discrimination was "redundant, immaterial, impertinent, or scandalous."  *Id.*  Accordingly, to the extent he moves under Rule 12(f), Plaintiff's motion is also denied.

Having canvassed the rules that Plaintiff could possibly have intended to invoke, the Court finds no reason to strike Millennium's answer.

## 2.  Motion to Preclude Defendant's Witnesses

Outside the framework of any known rule or doctrine, Plaintiff's counsel, as a cover for his discovery failures, complains that Millennium informed him of *too many* potential witnesses. *See* Pl. Br. at 10–11.  Millennium provided a list of nine individuals, other than Plaintiff, who may have relevant knowledge.  Lefkowitz Decl., Ex. K.  Five of those nine, including Dawn Robbins, were identified as individuals who may be able to testify about "the decision to terminate Mr. Almanzar's position."  *Id.* at 3.   Mr. Lefkowitz declined to depose three of the five witnesses, even though their testimony — as clearly indicated in Millennium's disclosures — was likely central to Millennium's ability to articulate a non-discriminatory explanation for Plaintiff's termination.  By failing to depose Robbins and others, Plaintiff's counsel failed to obtain any evidence that could have been used to rebut Millennium's non-discriminatory rationale for eliminating Plaintiff's position.  The proper remedy, according to Plaintiff, should

be to preclude Millennium from offering at trial the damaging testimony of all the witnesses that *he* declined to depose. *Id.* Plaintiff's counsel contends, in effect, that he cannot be reasonably expected to depose more than two disclosed witnesses to parry his adversary's defenses. *See id*. The Court cannot overstate the extent to which Plaintiff's counsel's argument boggles the mind.

Perhaps sensing that he has been less than diligent, Plaintiff's counsel attempts to justify his failure to subpoena or depose other witnesses by faulting Defendant and the witnesses he did depose. First, he claims that Defendant's Rule 26 disclosures misled him by identifying Nina Tekchandani as a witness, even though she had left Millennium's human resources department before Plaintiff's firing. *See* Pl. Br. at 10. Ms. Tekchandani, notwithstanding the timing of her departure, was clearly a witness who was properly disclosed; Plaintiff testified at his deposition that she was his point-of-contact concerning his medical leave and return to work. Almanzar Dep. at 17, 110. Similarly, Plaintiff faults Frieda Kavanagh, Millennium's former director of human resources, for not having detailed recollections of Plaintiff's firing and Mr. Lee, Millennium's Rule 30(b)(6) witness, for not knowing which member of Millennium management had relevant knowledge. *See* Pl. Br. at 9. After apparently striking out with Tekchandani, Kavanagh, and Lee (whom defense counsel had explained in advance would lack direct knowledge), Plaintiff's counsel claims that he "justifiably relied upon" their testimony and "did not serve subpoenas to take the deposition of any other of the nine (9) former employees named by Defendant in its Rule 26 disclosures." *Id.* at 10. The Court cannot fathom why Kavanagh's failure of recall or Tekchandani's or Lee's absence from the room where it happened would lead Plaintiff's counsel to believe that deposing other witnesses would be futile.

In short, Plaintiff was on notice of Millennium's potential witnesses, which were far from excessive. His counsel's unilateral and misguided failure to depose Defendant's witnesses

cannot serve as a basis to exclude their testimony.  Otherwise, every litigant could freely dictate the evidence available to their adversary by refusing to engage in discovery.

### 3.   Spoliation and Failure to Produce Discovery

Plaintiff claims that Defendant should be sanctioned for failure to preserve Plaintiff's employment file and for failing to produce other requested documents during discovery.  Pl. Br. at 12, 16.  As to the former, the Court does not discern any prejudice, and, as to the latter, Plaintiff should have raised the issue before the close of fact discovery.  Regardless of the timing of Plaintiff's claim, Defendant does not appear to be relying on any unproduced documents.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Authority to impose a sanction for spoliation derives from Rule 37 and the Court's inherent power to control litigation. *Id.* at 779.  Any "sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'"  *Id.* (citation omitted).  In other words, the severity of any sanction must correspond to the importance of the evidence and the disadvantage suffered by the moving party.

First, under the rubric of spoliation, Plaintiff reiterates his request for this Court to strike Defendant's answer or to draw an adverse inference against all of Defendant's evidence.  Pl. Br. at 15.  Plaintiff claims that the loss of Plaintiff's employment file is significant because it relates to Plaintiff's "performance, promotions, discipline, job duties and responsibilities, taxes, his FMLA leave, and the extension of the FMLA leave . . . ."  *Id.* at 12–13.  Assuming without

deciding that Defendant failed to preserve evidence despite foreseeable litigation,[20] none of the topics identified by Plaintiff is in material dispute. Defendant does not argue at this stage that Plaintiff's performance was in any way subpar; nor is there any dispute that Plaintiff requested and received FMLA leave and a subsequent extension. While Plaintiff's job duties are in genuine dispute, the basis for the Court's grant of summary judgment, as discussed above, is Plaintiff's failure to rebut the evidence that the Hilton acquisition (or the evidence that his position had been deemed unnecessary) was an independently sufficient basis for his termination — a rationale entirely divorced from Plaintiff's individual performance or his job duties.[21] Because Plaintiff's case fails for reasons unrelated to the lost documents, striking Defendant's answer and discounting the entirety of Defendant's evidence would not be proportional to any disadvantage inflicted on Plaintiff by the loss of his employment file and would not be necessary to restore him to the pre-destruction status quo. *See Port Auth. Police Asian Jade Soc'y of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey*, 601 F. Supp. 2d 566, 570-71 (S.D.N.Y. 2009) ("Because an adverse inference instruction is not required to restore the plaintiffs to the position they would occupy but for the spoliation [of performance evaluations], an adverse inference instruction is not warranted.").

Apart from spoliation, Plaintiff's counsel contends that Defendant should be precluded from using any documents that it failed to produce during discovery.[22] *See* Pl. Br. at 16. On that theory, he argues that the Robbins Declaration should be stricken pursuant to Rule 37(c) because

---

[20]     Plaintiff's counsel claims that Millennium was on notice of potential litigation as of August 4, 2017, but the record does not reveal when the files were lost. Pl. Br. at 12.

[21]     Moreover, documents such as Plaintiff's termination letter and medical notes were accurately preserved and produced by Plaintiff.

[22]     "[M]erely identifying that certain documents were not produced does not entitle a party to spoliation sanctions." *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 127 (E.D.N.Y. 2012).

her statements "invoke the existence of" a variety of documents concerning Millennium's transition to Hilton's management. *See id.* ("Defendant should not be permitted to withhold the relevant documents and then have Dawn Robbins testify as to what the documents say."). As a threshold matter, nothing in Robbins' declaration references any unproduced documents or characterizes any such document. Rather, she submitted an affidavit based on her personal knowledge and could have been deposed on the basis for her knowledge — had Plaintiff's counsel chosen to do so. *See* Robbins Decl. ¶ 3. Nor has Millennium submitted any unproduced documents for the Court's consideration. Plaintiff's Rule 37(c) theory is, therefore, simply inapplicable.

As a final note, the Court observes that Plaintiff's unenviable position could have been entirely avoided if Plaintiff's counsel had utilized the tools available to him and diligently pursued evidence critical to his client's case. Although Mr. Lefkowitz argues that "Defendant should not be permitted to spring Dawn Robbins or any other witness on the Plaintiff and this Court," there is no dispute that she and other witnesses were listed in Defendant's Rule 26 disclosures. Notwithstanding the Rule 26 disclosures, Plaintiff's counsel chose to ignore Robbins and six other individuals as potential witnesses. Additionally, while Plaintiff contends that the Hilton transition documents should have been produced in response to his document requests, a review of Plaintiff's document requests reveals a reasonable dispute as to the scope of his request and whether, for instance, it would encompass the acquisition agreement between Millennium and Hilton. *See* Document Requests (Dkt. 43-5) ¶ 10 (requesting "[a]ll documents concerning the reason for plaintiff's termination from Defendant"). Once Plaintiff realized that Defendant's production was deficient, he should have, consistent with the Court's Individual Practices and instruction at the initial conference, met and conferred with opposing counsel and

then raised the issue with the Court if the dispute could not be resolved between the parties. *See* Pl. Br. at 12 (accusing Defendant of producing irrelevant documents). At that point, it would have been apparent whether the missing documents ever existed or had been destroyed, or whether defense counsel simply adopted a narrower interpretation of Plaintiff's request. The Court could have easily resolved any dispute as to the relevant scope of discovery. What Plaintiff should not have done was to sit on the issue, wait until the close of fact discovery, and then attempt the moonshot of striking Defendant's answer based on Plaintiff's counsel's own failure to pursue available evidence.[23]

To the extent that Plaintiff claims that Defendant's non-discriminatory rationales were not apparent to him prior to Defendant's motion for summary judgment and that he could not have requested the Hilton transition documents with any specificity, that predicament is again the product of counsel's own failings. On May 30, 2019, Plaintiff, after learning that no current Millennium employee had direct knowledge of Plaintiff's termination, sought leave from the Court to serve interrogatories about Millennium's anticipated defenses in order to bind Millennium to a legal theory. *See* Pl Letter at 3. The Court granted leave to serve such interrogatories, but Plaintiff inexplicably failed to make use of that remedy. Now, confronted with his failure to do so, Plaintiff contends that such interrogatories would have been pointless anyway, because Mr. Lee did not have direct knowledge. Pl. Reply at 4. Plaintiff's response is, again, frustratingly obtuse.[24] Had Millennium indicated that it had no known defense, such a

---

[23]    Plaintiff's reply brief argues, rather bizarrely, that he did not follow the Court's procedures concerning discovery disputes because the documents he sought related to Defendant's defenses, rather than Plaintiff's affirmative case. Pl. Reply (Dkt. 48) at 6. Plaintiff's position, suffice it to say, is bizarre and left his client exposed, given the *McDonnell-Douglas* burden-shifting framework.

[24]    Indeed, Plaintiff's counsel's abrupt reversal as to the efficacy of his own requested remedy leaves him susceptible to a potential order to show cause why he should not be sanctioned for wasting his adversary's and the Court's resources. As previously discussed, Mr. Lee's testimony should not have surprised Plaintiff's counsel — at

response would likely have been conclusive as to Millennium's liability.  Assuming that Millennium would not have conceded liability, Plaintiff would have been immediately alerted to Millennium's current summary judgment arguments, and Plaintiff could have requested an extension of fact discovery, if necessary, to request further documents or depositions in order to rebut Millennium's disclosed rationales for terminating Plaintiff.  As has been the case throughout this litigation, Plaintiff's counsel failed to use the tools at his disposal and now seeks to shift the consequences of his failure to act onto his adversary.

In sum, the Court finds that no sanctions against Defendant are appropriate, and Plaintiff's cross-motion shall be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's ADA, ADEA, and NYSHRL claims because Plaintiff failed to show that Plaintiff's age or disability was a but-for cause of his termination; Defendant's motion is also GRANTED as to Plaintiff's NYCHRL claims because Plaintiff did not comply with service requirements and abandoned the claims.  Plaintiff's motion to strike Defendant's answer and for other sanctions is DENIED in its entirety.

The Clerk of Court is respectfully directed to terminate all pending motions and deadlines and to close the case.

**SO ORDERED.**

Date:  **April 19, 2021**
       **New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

the time his request was submitted to the Court, he already knew that no existing Millennium employee had personal knowledge of Plaintiff's termination.